UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REGINALD CECIL LANE, ET AL, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-1971 |
| | § | |
| HALLIBURTON, A CORPORATION, ET AL, | § | |
| | § | |
| *Defendants.* | § | |

### ORDER

Pending before the court is the plaintiffs' motion to remand. Dkt. 25. After considering the parties' arguments, the evidence, and the applicable law, the court concludes that the motion for remand should be DENIED.

### BACKGROUND

The facts as alleged in the plaintiffs' original petition are as follows. Dkt. 1, Ex. 2. The defendant Kellogg Brown & Root (KBR) performed non-combat logistical services for the United States Army Material Command in Iraq under the Logistics Civil Augmentation Program (LOGCAP) contract. The Army specified services to be performed through Task Orders. Task Order 59 directed KBR and its affiliates to institute a hiring campaign to recruit civilian truck drivers for work in Iraq.

In October 2003, the plaintiff Reginald Cecil Lane left his current employment to work for KBR as a truck driver in Iraq. Under Task Order 43, Lane and the other civilian truck drivers were assigned to deliver fuel from their station at Camp Anaconda to specified locations in the Area of Operations. On April 9, 2004, Lane was assigned to the Longstreet Convoy, one of several fuel convoys. Lane's convoy was dispatched into an area known by the Army to have been subjected to

continuous attack by anti-American factions. Lane's convoy came under fire along its route injuring many of the civilian drivers. Lane, in particular, suffered the partial loss of an arm and irreparable brain damage.

Plaintiffs allege state court actions, including fraud and deceit, fraud in the inducement, intentional concealment of material facts, intentional misrepresentations, intentional infliction of physical and emotional injuries, and common law civil conspiracy to commit fraud. The plaintiffs seek general, punitive and exemplary damages. The plaintiffs also requested that the state court enjoin KBR and all other defendants from continuing "their unlawful, fraudulent and deceitful actions."

## PROCEDURAL HISTORY

On April 7, 2006, the plaintiffs moved to intervene in *Fisher v. Halliburton*, No. H-05-1731. *Fisher* Dkt. 90. On May 8, 2006, Judge Atlas denied their motion to intervene. *Fisher* Dkt. 95. Accordingly, on May 9, 2006, the plaintiffs filed suit in the 333rd Judicial District of Harris County, Texas, *Lane v. Halliburton*, No. 2006-28755. In a timely fashion, the defendants (Halliburton)[1] removed the case to this court pursuant to 28 U.S.C. §§ 1442 (federal officer removal) and 1441 (federal question removal). Dkt. 1. The plaintiffs timely filed a motion to remand. Dkt. 25.

---

[1.] All the defendents joined in the removal. In the interest of clarity, the court will call them Halliburton, or KBR where appropriate, throughout this order. The Halliburton defendants consist of :Halliburton; KBR Holdings, LLC; Kellogg Brown & Root, Inc.; Service Employees International Inc.; DII Industries, LLC; Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International, Inc. The other defendants are Strategic Ecomm, Inc., Webrecruiter, and Doe Defendants 1 Through 10.

**FEDERAL OFFICER REMOVAL UNDER 28 U.S.C. § 1442(a).**

It is a basic tenant of removal that the defendant bears the burden of establishing federal jurisdiction over the case. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Ordinarily, the court is bound by the well-pleaded complaint rule, restricting it to a survey of the entire record, including the defendant's pleadings, only when required to shed light on the plaintiff's pleadings. *Aquafaith Shipping, Ltd. v. Jarillas*, 863 F.2d 806, 808 (5th Cir. 1992). However, section 1442(a) creates an exception to the well-pleaded complaint rule because it predicates removal on the existence of a colorable federal defense. *Id.* As such, the court may look to the defendant's pleadings as well in determining jurisdiction.

The federal officer removal statute "is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 968 (1989). But, once the defendant qualifies for section 1442(a), the right of removal is absolute. *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 1664 (1981). In enacting section 1442(a), Congress "has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816 (1969). Although "the right to [federal officer] removal is not unbounded," it must not be "frustrated by a grudgingly narrow interpretation." *Winters*, 149 F.3d at 398.

In order to remove under section 1442(a), Halliburton must meet three prerequisites. *Winters*, 149 F.3d at 398-400. First, Halliburton must be a "person" as contemplated by the statute. *Id.* at 398. Second, Halliburton must show that it "acted pursuant to a federal officer's directions and that a causal nexus exists between [its] actions under color of federal office and the plaintiff's

claims." *Id.* Lastly, Halliburton must assert a "colorable federal defense." *Id.* at 400. Halliburton easily satisfies the first prong since the Fifth Circuit has held that corporate entities are "persons" under section 1442(a). *Id.* The remaining two prongs are vigorously contested by the parties.

**1.     Actions Under Color of Federal Office.**

In analyzing the "color of federal office" requirement, the Fifth Circuit notes that the requirement should be given a broad reading "so as not to frustrate the statute's underlying rationale." *Winters*, 149 F.3d at 398. However, it has limits and may only arise when there is a federal interest in the matter. *Id.* The inquiry centers around "the causal nexus between the federal officer's directions and the plaintiff's claims." *Id.* Here, the connection between the government's level of control over the truck convoys under Task 43, specifically the deployment of the Longstreet Convoy on April 9, 2004, and the injuries Mr. Lane sustained as a result of that deployment must be examined.

The Fifth Circuit has not yet addressed the level of supervision necessary to support the causal nexus in a service contract. But, parallels may be drawn to its analysis of the sustained, long-term contract for goods at issue in *Winters v. Diamond Shamrock Chemical Company*. In *Winters*, the court reviewed the amount of control the Defense Department had over the chemical companies with whom it had contracted to make Agent Orange.[2] *Id.* The contractual relationship between the United States and the chemical manufacturer lasted from 1962 to 1971. *Id.* at 390. The Defense Department dictated the specific make-up, packaging and delivery of Agent Orange. *Id.* at 400. Additionally, the Department maintained on-going supervision and strict control over Agent

---

[2.]     Agent Orange was a chemical blend of herbicides used as a defoliator by the United States military in the Vietnam war. *Winters*, 149 F.3d at 390.

Orange's development throughout the life of contract. *Id.* at 399. The court found that significant, detailed, ongoing supervision of the contractor was sufficient to allow the contractor to qualify for federal officer removal.

Much has been made by the parties about the difference between a service contract and a contract for goods. However, the amount of ongoing supervision in either contract supplies the necessary causal nexus, not the subject of the contract itself. According to an exhibit to the plaintiff's original petition, the Department of the Army was inextricably involved in any decision to deploy a convoy. Dkt. 1, Ex. 2 (Plaintiff's Original Petition, Ex. 9). According to the Army's investigation report issued August 2, 2004, the decision of where to send the convoys on April 9, 2004 was not relayed to Kellogg Brown & Root (KBR) until the 724th Transportation Company (TC) arrived at the staging area that morning. *Id.* In fact the report describes the mission as "a no notice mission." *Id.* The Army also made the following findings:

> KBR had no prior knowledge of the mission change.
> • • •
> The personnel of the 724th TC and KBR did not have any knowledge of the location or route to BIAP,[3] other than one military guide.
> • • •
> Planning of Route Selection: The route provided the 724th TC was given to the 172 CSG S3[4] from the 13th COSCOM.[5]
> • • •
> The convoy briefing given by the CC[6] did cover the information required for members of the convoy. The CC reviewed the change in rules of engagement (ROE), highway speeds, actions with vehicles, frequencies, recovery

---

[3]    Baghdad International Airport.

[4]    172nd Corps Support Group's Operations and Training Officer.

[5]    13th Corps Support Command.

[6]    Convoy Commander. While this can refer to the KBR CC or the military CC, the context suggests that it was a military CC because of references to "his soldiers" and "his PLT SGT" (Platoon Sargent).

> procedures, actions on contact, and other standard convoy topics. [Redacted], the guide for the convoy, outlined in the sand/stone with his boot a rough diagram of the route and exits. The military drivers had a rough strip map of the route but the KBR drivers had no type of maps. Many of the drivers both military and KBR did not understand the route and knew only to follow the vehicle in front of them.

*Id.* The amount of control over the route information, the manner, and the security for each convoy amply satisfies the second prerequisite for federal officer removal. The Army's supervision was significant, detailed and ongoing.

**2.      Assertion of a Colorable Federal Defense.**

"Federal officer removal under 28 U.S.C. § 1442(a) must be predicated upon the averment of a federal defense." *Mesa*, 489 U.S. at 139, 109 S.Ct. at 970. Only one colorable defense is needed to meet this prong of the test. *See, e.g.*, *Winters*, 149 F.3d at 400. One of the main purposes of the federal officer removal statute was to ensure a federal forum where federal defenses could be litigated. *Id.* Therefore, the "defendants need not prove the asserted defense but need only articulate its 'colorable' applicability to the plaintiff's claims." *Id*. The defendants have asserted several possible federal defenses, including the government contractor defense, the "combat activities" exception to the Federal Tort Claims Act, the state secrets doctrine, the Defense Production Act of 1950, federal immunities, and the political question doctrine, the viability of any one of which will be sufficient to meet the third requirement for federal officer removal. Dkt. 1.

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230, 106 S.Ct. 2860, 2866 (1986). The Supreme Court has set out

a list of six formulations to aid courts in a "discriminating inquiry into the precise facts and posture of the particular case." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710 (1962).

> (1)　Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department;
>
> (2)　or a lack of judicially discoverable and manageable standards for resolving it;
>
> (3)　or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;
>
> (4)　or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;
>
> (5)　or an unusual need for unquestioning adherence to a political decision already made;
>
> (6)　or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* "[O]ne of these formulations [must be] inextricable from the case at bar." *Id.* Therefore, for Halliburton to present a colorable political question argument, it must have alleged facts sufficient to bring at least one of the *Baker* formulations into question.

The first and arguably most important formulation is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *Id.* The Constitution allocates the power of Commander in Chief of the United States Army and Navy to the executive branch. U.S. CONST. art II, § 2, cl. 1. At issue in this case is the question of whether Halliburton or the Army had control over the decision to deploy the convoy. As demonstrated in the above discussion regarding "under color of federal office," Halliburton has made an initial showing that the Army made all of the decisions at issue. If the evidence shows that the Army did control the decisions of when and where to send the convoys, Halliburton could make the argument that a review of Army policy

relating to conduct in a theater of war would implicate separation of powers issues. This same initial showing could arguably impact two or even three other formulations under *Baker*. Halliburton could argue that such an examination would require "initial policy determinations of a kind clearly for nonjudicial discretion," or would express a "lack of the respect due coordinate branches of government." *Id.*

The applicability of the political question defense to independent contractors in a similar setting has been demonstrated recently in two district court decisions. In a case involving the bombing of a dining facility managed by KBR for the Army in Iraq, Judge Lake dismissed the case for want of jurisdiction based on political question. *Smith v. Halliburton*, No. 4:06CV0462, 2006 WL 2521326, (S.D. Tex Aug. 30, 2006). Also, in a Georgia case, the district court dismissed as non-justiciable a negligence case brought by the family of a U.S. soldier killed by a suicide bomber while escorting a KBR convoy. *Whitaker v. Kellogg Brown & Root*, No. 4:05-CV-78, 2006 WL 1876922, (M.D. Ga. July 6, 2006). The court does not express an opinion with regard to the merits of the political question arguments or the degree of similarity of these two recent cases to the instant case beyond finding that Halliburton has a colorable defense based on political question. Halliburton may not have the evidence to prove that it was under the control of the Army at the time in question, but it has presented enough facts to allow it to have this issue decided in a federal forum. *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 1817 (1969) (holding that a defendant need only "put in issue the questions" in order to allow "the validity of [his] defenses [to] be determined in the federal courts"). Halliburton has satisfied all three prerequisites for federal officer removal under section 1442(a). Accordingly, the court finds that it has subject matter jurisdiction to hear the case at bar.

## CONCLUSION

Based on the foregoing discussion and analysis, the plaintiff's motion to remand is DENIED.

Signed at Houston, Texas on September 7, 2006.

_____
Gray H. Miller
United States District Judge